UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>LUIS RAMIREZ,<br><br>      Defendant. | **ORDER**<br><br>98 Cr. 438 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

    Defendant Luis Ramirez seeks an order pursuant to 18 U.S.C. § 3582(c)(1)(A) granting him compassionate release.  (Dkt. No. 465)  For the reasons stated below, Defendant's application will be denied.

## BACKGROUND

### I. RAMIREZ'S CRIMES, TRIAL, AND SENTENCE

    Defendant was tried in a RICO case in 2000, along with his brother – Juan Ramirez – and their co-defendant Shirley Calcano.  On December 7, 2000, "[a]fter a seven-week jury trial, [all three defendants] were convicted of crimes relating to racketeering, narcotics trafficking, robbery, assault, kidnaping, murder, interstate transportation of stolen property, and the use and possession of firearms.  In January 2002, Luis Ramirez was sentenced to life imprisonment plus five years."  Ramirez v. United States, 898 F. Supp. 2d 659, 661 (S.D.N.Y. 2012).  Ramirez was convicted of racketeering (18 U.S.C. §§ 1961 and 1962), racketeering conspiracy (18 U.S.C. § 1962(d)), kidnapping in aid of racketeering (18 U.S.C. § 1959(a)(1)), murder in aid of racketeering (18 U.S.C. § 1959(a)(1)), conspiracy to commit Hobbs Act robbery (18 U.S.C. § 1951), Hobbs Act robbery (18 U.S.C. §§ 1951 and 2), narcotics conspiracy (21 U.S.C. § 846), kidnapping resulting in death (18 U.S.C. §§ 1201 and 2), and using and carrying

firearms in relation to a crime of violence (18 U.S.C. §§ 924(c) and 2).  (Judgment (Dkt. No. 225) at 1-2)

The evidence at trial demonstrated that Luis Ramirez was a member of "the 165th Street Organization, a violent gang that operated in the Bronx," which his brother, Juan, led. "Members of the Organization engaged in widespread car theft; narcotics trafficking; armed robberies of individuals, businesses, and other drug dealers in the Bronx, New Jersey, and Pennsylvania; and kidnapped, assaulted, and murdered rival drug dealers." United States v. Juan Ramirez, No. 98CR438PGGSDA, 2021 WL 4150891, at *1 (S.D.N.Y. Sept. 13, 2021).

The jury concluded that Luis Ramirez had committed violent crimes in furtherance of the racketeering conspiracy, including the following:

"In the fall of 1994, [the Ramirez brothers], Beverlyn Santiago, Damon Rodriguez, and Ernesto Martinez robbed another drug dealer, Alcides Martes, of ten kilograms of cocaine.  [They] carried out the robbery dressed as police officers and were equipped with handcuffs and firearms.  They forced Martes, together with Martes' wife, his two children, and two of Martes' neighbors, into Martes' apartment in the Bronx." Id. at *2.  Luis Ramirez pistol-whipped Martes in the head, handcuffed him, and held a gun to his back while his brother ransacked the apartment.  (Trial Tr. 1064, 1881-82, 2066-68)[1]  "Once [Juan] Ramirez found the ten kilograms of cocaine, [the defendants] fled the apartment and divided the cocaine among themselves." Juan Ramirez, 2021 WL 4150891, at *2.

In February 1995, Luis Ramirez participated in the robbery and murder of "Francisco Soto, whom [the gang] knew to be in possession of 125 kilograms of cocaine.  [Juan] Ramirez and other gang members carried out the robbery on March 15, 1995, dressed as police

---

[1] The trial transcript has been docketed in 25 parts as the exhibits to Dkt. No. 444.

officers and carrying handcuffs and firearms. They found Soto outside of a New Jersey auto body shop, sitting inside a vehicle with the 125 kilograms of cocaine. Soto was forced out of the vehicle at gunpoint by [Juan] Ramirez and his crew, handcuffed, put into the back of a van, and driven to [Juan Ramirez's apartment] in the Bronx." Id. at *1.

Luis Ramirez had missed the robbery and abduction because he had not noticed a page from his brother. As a result, the other gang members left without the Defendant. Angry that he had missed the abduction, Luis Ramirez went to his brother's apartment. Juan Ramirez told him that he could obtain a kilogram of the stolen cocaine if he "g[o]t rid of the body." Luis Ramirez agreed to drive a van holding Soto to a secluded location, where Soto would be killed. (Trial Tr. 1098) He then drove the van, with Soto in it, to "an isolated area of Orchard Beach in the Bronx, where Jose Rojas-Vargas and Manuel Gonzalez walked Soto into a wooded area, and shot and killed him." Juan Ramirez, 2021 WL 4150891, at *1. The sound of the shot reached the van, in which the Defendant waited. (Trial Tr. 1101) After the murder, gang members reconvened at Juan Ramirez's apartment for a "joyous" meeting, and divvied up the victim's cocaine. (Id. at 1102-06)

Luis Ramirez was sentenced on January 24, 2002, by the Hon. Robert L. Carter, who had presided over the trial. At sentencing, Luis Ramirez told the Court that he had been convicted on the basis of perjured testimony:

> First of all, your Honor, I would like to take this opportunity to tell you about the real Luis Ramirez, the father, the son, the husband, brother, the person you are about to sentence here. Before you ever met me in this courtroom you judged by accusations made by others who would gain by making false statements. I am the father [of] two beautiful people who love me and miss me, Luis and Brian, 8. As you can imagine . . . , your Honor, being a father you know how important it is to be there for them while growing up and mostly my wife, who I have been married to for the past eleven years of our lives. And even after all the lies and accusations that has been made against [me] she still she stand[s] by me. She also know.

3

(Jan. 24, 2002 Tr. (Dkt. No. 466-2) at 12)

After Luis Ramirez spoke, Judge Carter pronounced sentence. He denied a defense motion for a downward departure from the Sentencing Guidelines and sentenced Ramirez to life imprisonment plus five years, as mandated by statute. (Id. at 13-14) See 18 U.S.C. § 1201(a) (mandatory life sentence for kidnapping resulting in death); 18 U.S.C. § 924(c) (mandatory five-year, consecutive sentence for using, carrying, and possessing a firearm in furtherance of a crime of violence).[2]

Defendant has been incarcerated since his arrest in May 1998. (May 15, 1998 Minute Entry) As of today, he has served more than twenty-five years of his sentence of life imprisonment plus five years.

## II. RAMIREZ'S COMPASSIONATE RELEASE APPLICATION

On August 23, 2021, Ramirez applied to the warden of United States Penitentiary – Pollock ("USP Pollock") for compassionate release. The warden denied his request on September 17, 2021. (Sept. 17, 2021 Denial Ltr. (Dkt. No. 466-3) at 1)

On January 5, 2022, Ramirez filed a motion with this Court for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Def. Mot. (Dkt. No. 465))[3] He contends that (1) he has exhibited "extraordinary rehabilitation"; (2) his involvement with the 165th Street Organization was "limited"; (3) the Government made a pretrial plea offer that – had he accepted it – would have already resulted in his release; (4) the prison conditions resulting from the

---

[2] In addition to the mandatory consecutive sentences, Ramirez was sentenced to five additional life sentences and two twenty-year sentences, to run concurrently. (Judgment (Dkt. No. 225) at 3)

[3] On September 13, 2021, this Court granted Juan Ramirez's motion for compassionate release, because he had been diagnosed with Stage 4 pancreatic cancer. Juan Ramirez, 2021 WL 4150891.

4

COVID-19 pandemic support release; and (5) a reduction of his sentence to time-served would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). (Def. Br. (Dkt. No. 466))

In support of his application, Ramirez has submitted a letter that includes the following:

> Your Honor, from the moment of my arrest on this case, the significance of the crimes I committed became an albatross around my neck, seemingly suffocating my soul. I was always aware that my actions on the night Mr. Soto was murdered [were] a crime against humanity. Though believe it or not, I had no idea events that night would escalate to the point Mr. Soto would be killed. I don't say this to absolve myself of responsibility for his death. But rather, to point out my powerlessness in preventing the outcome of those circumstances.
>
> Your honor, I never meant for anyone to die. However, my greed caused me to make horrible decisions which resulted in a human being losing his life. I have been forced to reflect on this fact almost every day since the events of that night took place. The question which had dominated my mind since is, "how come I was unable to prevent this from happening?" And the best answer I can come up with is to never have been a party to evil. Sir, I understand now more than ever, that harboring wicked thoughts and engaging in wickedness itself is like opening pandora's box. One is always powerless in controlling the outcome. I understand now that no matter how harmless I may have thought my involvement in that night's crime [was], I am just as accountable for the outcome as everyone else. . . .
>
> [M]y conscience was driven to seek redemption almost immediately following my arrest on this case. Before I was even convicted on these counts, I began my transformation. . . .

(Aug. 15, 2021 Def. Ltr. (Dkt. No. 466-1) at 1-2)

The Government opposes Ramirez's application, and disputes all of his arguments. (Govt. Opp. (Dkt. No. 470))

## DISCUSSION

### I.      LEGAL STANDARD

The compassionate release statute – 18 U.S.C. § 3582(c)(1)(A) – provides that a court may

5

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant . . . reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction. . . .

18 U.S.C. § 3582(c)(1)(A).

A defendant seeking compassionate release must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days [must have lapsed] from the receipt of such a request by the warden of the defendant's facility." Id.

Where a defendant has exhausted his administrative remedies, a court considering an application for compassionate release must weigh the factors set forth in 18 U.S.C. § 3553(a) and determine whether there are "extraordinary and compelling reasons [that] warrant . . . a [sentence] reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "[T]he district court has broad discretion in evaluating a defendant's motion for compassionate release," United States v. Vargas, 502 F. Supp. 3d. 820, 824 (S.D.N.Y. 2020), and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court]. . . ." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).

## II.     ANALYSIS

The parties do not dispute that Ramirez has exhausted his administrative remedies. Accordingly, the Court turns to the merits of his application.

### A.     "Extraordinary and Compelling Reasons"

Ramirez argues that he has demonstrated "extraordinary rehabilitation" (Def. Br. (Dkt. No. 466) at 27), noting that he has obtained a GED, completed coursework, and worked as an orderly. (Id. at 28-29; Ramirez Prison Work History (Dkt. No. 466-6)) While these actions

6

are all positive, they are not unusual, much less "extraordinary." And during his incarceration, the Defendant has incurred thirteen disciplinary infractions, including an infraction as recent as 2021. (Ramirez Disciplinary History (Dkt. No. 470-3))

And given Ramirez's participation in the violent crimes discussed above, his argument that his involvement in the gang's "affairs" was "limited" (Def. Br. (Dkt. No. 466) at 30) is not persuasive. He pistol-whipped Martes and held him at gunpoint in front of his family while his brother ransacked the victim's apartment searching for ten kilograms of cocaine. The following year, he drove Soto to his death. Both of these violent crimes were in furtherance of the gang's narcotics trafficking and both were highly lucrative.

As to the Government's plea offer, Ramirez was offered a 25-year sentence prior to trial. While he is now serving a life sentence, the disparity between the plea offer and the sentence ultimately imposed – which was statutorily mandated – is not shocking. And given that Ramirez was convicted of a kidnapping resulting in death and murder in aid of racketeering, among many other serious crimes, the severe sentence imposed on Ramirez was entirely appropriate.

As to the COVID-19 pandemic, Ramirez is a healthy 53-year-old who has been vaccinated multiple times. (Ramirez Immunization Record (Dkt. No. 470-4)) Courts have found that COVID-19 is not a reason to release an inmate in such circumstances, when the risk that they "'will contract COVID-19 and become seriously ill . . . [is] extremely small.'" United States v. Morel, 10 Cr. 798 (PAC), 2021 WL 2821107, at *1 (S.D.N.Y. July 7, 2021) (quoting United States v. Pabon, 17 Cr. 312 (JPC), 2021 WL 603269, at *4 (S.D.N.Y. Feb. 16, 2021)).

### B. Section 3553(a) Factors

Even if Ramirez had proffered "extraordinary and compelling reasons" justifying his release, his application would still be denied, because the trial record demonstrates that his sentence was – as noted above – completely consistent with the statutory objectives of sentencing.

18 U.S.C. § 3553(a) provides:

> **(a) Factors To Be Considered in Imposing a Sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed—
>
> > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > **(B)** to afford adequate deterrence to criminal conduct;
> >
> > **(C)** to protect the public from further crimes of the defendant; and
> >
> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

18 U.S.C. § 3553(a)(1)-(2).

The life sentence imposed on Ramirez served these sentencing objectives. In particular, it "reflects the seriousness of [his] offense[s]," "promote[s] respect for the law," "provide[s] just punishment," "deter[s] . . . criminal conduct," and "protect[s] the public from further crimes of the defendant."

Ramirez's crimes are among the most serious in Federal criminal law. They demonstrate a high degree of culpability, and a ready willingness to commit acts of violence. With respect to the murder of Soto, Ramirez drove him to his death, fully aware that he would be

8

killed. In fact, the gang had planned long before the kidnapping to murder Soto, so that there would be no witnesses to the theft of the 125 kilograms of cocaine. (Trial Tr. 318, 1072-74) As to motive, Ramirez agreed to participate in the kidnapping and murder of Soto because he was angry about missing the initial robbery – which he had known about in advance and planned to join – and wanted to make sure that he would still receive some of the stolen cocaine. In addition to this kidnapping and murder, Ramirez also beat and robbed a man at gunpoint in front of his family. In sum, Ramirez's crimes are vicious in nature and indicate that he presents a serious threat of danger to the community.

Moreover, to this day, Ramirez has still not accepted responsibility for his conduct. In his letter to the Court, Ramirez continues to minimize his actions and culpability, stating that he "had no idea events that night would escalate to the point Mr. Soto would be killed," that he "never meant for anyone to die," and that at the time, he considered his involvement "harmless." (Aug. 15, 2021 Def. Ltr. (Dkt. No. 466-1) at 1-2) None of this is true. Ramirez participated in Soto's kidnapping and murder with full knowledge that Soto would be killed. Ramirez's refusal to accept or acknowledge this fact – even as he maintains that he has been "redeemed" or "transformed" – confirms that a sentencing reduction is not appropriate.

Similarly, Ramirez asserts in his letter that he "was driven to seek redemption almost immediately following [his arrest]." (Aug. 15, 2021 Def. Ltr. (Dkt. No. 466-1) at 2) But at sentencing – more than three years after his arrest – Ramirez told Judge Carter that he had been convicted based on "lies" and "accusations made by others who would gain by making false statements." (Jan. 4, 2022 Tr. (Dkt. No. 466-2) at 12)

In sum, consideration of the Section 3553(a) factors here indicates that the application for compassionate release should be denied.

9

## **CONCLUSION**

For the reasons stated above, Defendant's application for compassionate release pursuant to 18 U.S.C § 3582(c)(1)(A)(i) is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 465).

Dated: New York, New York
September 11, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge